**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation; SAN DIEGO COASTKEEPER, A California non-profit corporation,

               Plaintiffs,

    vs.

DECCO CASTING, INC., a California corporation,

               Defendant.

Civil Case No.3:20-cv-00523-CAB-BLM

**CONSENT DECREE**

**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)**

## CONSENT DECREE

The following Consent Decree is entered into by and between San Diego Coastkeeper ("Coastkeeper"), Coastal Environmental Rights Foundation ("CERF and Coastkeeper") (collectively, "Plaintiffs") and Decco Casting, Inc. ("Defendant" or "Decco"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF and Coastkeeper's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, Decco is the owner and operator of an aerospace parts manufacturing company located at 1596 Pioneer Way, El Cajon, CA 92020, hereinafter referred to by the Settling Parties as the "Decco Facility";

**WHEREAS**, Plaintiffs' members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the Decco Facility, including specifically Forester Creek, San Diego River, and the Pacific Ocean;

**WHEREAS,** storm water and non-storm water discharges from the Decco Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order

No. 2014-0057-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on October 23, 2018, CERF and Coastkeeper sent Decco, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Decco Facility;

**WHEREAS**, on March 20, 2020, CERF and Coastkeeper filed a complaint against Decco in the United States District Court, Southern District of California, Case No. 3:20-cv-00523-BEN-BLM alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Decco Facility ("Complaint");

**WHEREAS**, CERF and Coastkeeper allege Decco to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Decco Facility;

**WHEREAS**, Decco denies all allegations in the Notice Letter and Complaint relating to the Decco Facility;

**WHEREAS**, Plaintiffs and Decco have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint with respect to the Decco Facility without further proceedings;

**WHEREAS**, all actions taken by Decco pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

**FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.      Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Decco Facility is located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.      Plaintiffs have standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.      OBJECTIVES**

6.      It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by CERF and Coastkeeper in their Complaint. In light of these objectives and as set forth fully below, Decco agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act.

**II.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

7.      Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which are to be provided to Decco upon request. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a

reasonable amount of time.

8. The term "Effective Date" as used herein shall mean the day the Court enters this Consent Decree.

9. This Consent Decree will terminate three (3) years from the Effective Date, unless prior to the termination date either Party has invoked the dispute resolution provisions of this Consent Decree and there is an ongoing, unresolved dispute regarding either Party's compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the dispute pursuant to the dispute resolution provisions contained herein.

## III. COMMITMENTS OF THE SETTLING PARTIES.

10. The Parties acknowledge that Decco is in the process of making changes to its Facility to improve storm water quality and/or reduce polluted storm water discharges from the Facility. A list of proposed additional changes and implementation schedule are attached hereto as **Exhibit A**.

11. The objectives of the Settling Parties may also be achieved through implementation of a an "Alternative Means of Compliance" as defined in § III.F of this Consent Decree.

### A. <u>Storm Water Pollution Control Best Management Practices.</u>

12. In addition to maintaining the current structural and non-structural Best Management Practices ("BMPs") described in the Decco Facility's Storm Water Pollution Prevention Plan ("SWPPP"), Decco shall develop and implement BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and to comply with the Storm Water Permit's Discharge Prohibitions and Receiving Water Limitations.

13. Unless Decco implements an Alternative Means of Compliance as identified in § III.F of this Consent Degree, Decco agrees to develop and/or implement BMPs as

described more fully below and according to schedules in attached **Exhibit A**.

      **B.**   **Discharge Locations and Storm Water Sampling.**

14.     Discharge Locations. The current and future storm water sample locations for the Decco Facility are identified in **Exhibit B**. Should the future storm water sample locations change from what is presently depicted on Exhibit B, Decco will provide CERF and Coastkeeper with updated Exhibits.

15.     Sampling. The following storm water monitoring procedures shall be implemented at the Decco Facility:

      15.1.   Frequency. During the life of this Consent Decree, Decco shall collect samples from all discharge locations at the Decco Facility as well as run-on samples and aerial deposition samples from four (4) "qualified storm events" that occur in a reporting year such that Decco collects two (2) samples during the first half of the reporting year and two (2) samples during the second half of the reporting year. A "qualified storm event" or "QSE" is a storm event that produces a discharge from at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Decco has collected samples from two (2) or fewer qualified storm events, Decco shall collect samples during as many qualified storm events as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event. Should Decco sample more than four (4) QSEs in any reporting year the additional QSEs will not be subject to the provisions of Paragraph 17.

      15.2.   Contained or Stored Storm Water. To the extent water is stored or contained, Decco shall sample the stored or contained water at the Decco Facility before it is released even if not during operating hours.

15.3.  <u>Parameters</u>. Decco shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits.

15.4.  <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

15.5.  <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

15.6.  <u>Hold Time</u>. All samples collected from the Decco Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Decco shall use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology, i.e., 40 C.F.R., Part 136.

15.7.  <u>Results</u>. Decco shall request that sample analysis results be reported to them within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

15.8.  <u>Reporting</u>. Decco shall provide CERF and Coastkeeper with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 15.1 and 15.2 collected at the Decco Facility, within five (5) business days of receiving the final results including Quality Assurance/Quality Control data from the laboratory.

16.  <u>Contaminant Reduction</u>. Notwithstanding the above, Decco shall develop and implement BMPs to reduce pollutants in storm water discharges from the Decco Facility to levels below those in Table 1 ("Numeric Limits").

**Table 1. Numeric Limits**

| Pollutants | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Zinc* | 0.12 mg/L |
| Iron | 0.3 mg/L |
| Copper* | 0.013 mg/L |
| Oil and Grease | 15 mg/L |
| Aluminum | 0.75 mg/L |
| pH | 6.5-8.5 s.u. |

*Pollutants in Table 1 identified with an asterisk are hardness dependent, and the Numeric Limits identified in Table 1 may be adjusted pursuant to the California Toxics Rules hardness provisions. Defendant will provide Plaintiffs with the monitoring data used to calculate the hardness-adjusted values. The hardness-adjusted values shall not exceed the NALs in the Storm Water Permit. Exceedance of a hardness-adjusted value in Table 1 does not necessarily result in exceedance of a receiving water limitation.

17.     <u>Contaminant Reduction Strategy for Table 1 Exceedances</u>. If Decco's monitoring reveals an "exceedance" of the Numeric Limits specified in Table 1 for any pollutant (other than zinc as noted in Paragraph 17.1) at any discharge location, Decco shall submit an Action Plan to Plaintiffs for reducing the level of pollutant to Table 1 Limits.

17.1.   <u>Zinc Monitoring:</u> If Defendant's monitoring for zinc at any location (adjusted by subtracting zinc aerial deposition or run-on[1] concentrations for the QSE, or both) exceeds the hardness-adjusted Table 1 zinc value, Defendant shall submit an Action Plan as detailed below. Defendant shall use its best efforts to obtain a sample of its discharges prior to comingling with run-on.

17.2.   The Action Plan for the Decco Facility shall be prepared by a

---

[1] Run-on concentrations shall only be subtracted for those discharge locations actually impacted by run-on and during QSEs where run-on comingles with Defendant's discharge.

Qualified Industrial Storm Water Professional ("QISP") and must be submitted to Plaintiffs within thirty (30) days of Decco's receipt of sampling data showing exceedances of Table 1 Limits.[2] Any Action Plan required by this paragraph, shall be prepared by a QISP and must be submitted to Plaintiffs within thirty (30) days of Decco's receipt of sampling data showing the exceedance of the limit for the same pollutant listed in Table 1 Numeric Limits. In the event of exceedances for multiple analytes, Decco may submit a single Action Plan addressing all pollutants. Submitting an Action Plan that does not include all of the requirements in this paragraph will be considered a missed deadline.

17.3.  <u>Action Plan Requirements</u>. An Action Plan shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including either preventing the exposure of pollutant and pollutant sources to storm water and/or further treatment of storm water prior to discharge from the Decco Facility that will reduce pollutant concentrations to those below Table 1 Numeric Limits; and (4) time schedules for implementation of the proposed BMPs (if any). The time schedule(s) for implementation of additional BMPs shall ensure that all BMPs are implemented as soon as possible but no more than 180 days after CERF and Coastkeeper provide Decco comments on the Action Plan, unless the Settling Parties agree on a later date based on the time needed to design, permit, procure, and install the necessary

---

[2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Storm Water Permit.

1    equipment.

2    17.4.    <u>Action Plan Review</u>. CERF and Coastkeeper shall have thirty (30)

3    calendar days upon receipt of Decco's Action Plan to provide Decco

4    with comments on the Action Plan. Within twenty-one (21) calendar

5    days of Decco's receipt of CERF and Coastkeeper's comments on the

6    Action Plan, Decco shall consider CERF and Coastkeeper's

7    comments and shall either incorporate them into the Action Plan or,

8    if Decco declines to accept one or more of CERF and Coastkeeper's

9    comments, provide CERF and Coastkeeper with a written

10    explanation of the grounds for rejection.

11    17.5.    Disputes regarding the adequacy of a particular BMP shall not impact

12    the schedule for implementing any other BMP set forth in the Action

13    Plan. Any disputes as to the adequacy of the Action Plan shall be

14    resolved pursuant to the dispute resolution provisions of this Consent

15    Decree, set out in Article VI below.

16    17.6.    Decco shall not be required to post any Action Plan to SMARTS.

17    18.    Decco shall revise its SWPPP and/or Monitoring & Reporting Plan

18    ("M&RP") as applicable within thirty (30) days of receipt of Plaintiff's Action Plan

19    comments to reflect the changes and/or additional BMPs set forth in the Action Plan.

20    Decco shall notify CERF and Coastkeeper in writing when the final Action Plan has been

21    completely implemented, and the SWPPP and/or M&RP have been revised.

22    19.    After the Effective Date, no Action Plan will be required for those analytes

23    identified in Table 1 until the BMPs in Exhibit A are implemented per the schedule in

24    Exhibit A.

25    **C.    <u>Visual Observations.</u>**

26    20.    All visual observations shall be conducted in accordance with the terms of

27    the Storm Water Permit and this Consent Decree, and shall include at least the following:

28    20.1.    <u>Storm Water Discharge Observations</u>. During the life of this Consent

Decree, Decco shall conduct visual observations at each point where storm water is discharged during each Qualifying Rain Event.

20.2.   <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Decco shall conduct monthly non-storm water visual observations at each discharge point.

21.   Decco shall maintain logs of the visual observations, which shall be available for review during the life of this Consent Decree in conformance with the Storm Water Permit, and shall make these records available for Plaintiffs' review via email within five (5) business days of the request.

**D.   Employee Training.**

22.   Within forty-five (45) days of the Effective Date, Decco shall conduct additional employee training in order to familiarize employees at the Decco Facility with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Decco shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

23.   The training program shall require at least the following:

23.1.   <u>Non-Storm Water Discharge Training</u>. Decco shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the Decco Facility, and how to detect and prevent them;

23.2.   <u>BMP Training</u>. Decco shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to

prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Decco Facility;

23.3.  <u>Sampling Training</u>. Decco shall designate an adequate number of employees or consultants to ensure the collection of storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

23.4.  <u>Visual Observation Training</u>. Decco shall provide training to all individuals performing visual observations at the Decco Facility pursuant to this Consent Decree and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

24.    Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Decco who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Decco Facility's SWPPP and/or M&RP, as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within ten (10) business days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

25.    Decco shall maintain training records to document compliance with Article II.E of this Consent Decree and shall make these records available for Plaintiff's review

via email within five (5) business days of the request. The Training Program shall be specified in the SWPPP and Decco shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

**E.** **Storm Water Pollution Prevention Plan and Monitoring & Reporting Plan.**

26. Within sixty (60) days of the Effective Date of this Consent Decree, Decco shall revise the Decco Facility's SWPPP and/or M&RP as applicable to include:

    26.1. All BMPs that are currently utilized at the Decco Facility;

    26.2. All BMPs identified and developed pursuant to this Consent Decree and/or the Storm Water Permit;

    26.3. The specific individual(s) or positions responsible for compliance with the Storm Water Permit and this Consent Decree;

    26.4. A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Consent Decree;

    26.5. A description of each industrial activity that could impact stormwater discharges, all potential industrial pollutant sources, and each potential industrial pollutant associated with each industrial activity and/or pollutant source;

    26.6. Incorporate the requirements of the Storm Water Permit and this Consent Decree.

27. Additional and Ongoing Revisions to SWPPP and/or M&RP. Decco shall revise the SWPPP and/or M&RP if there are any changes in the Decco Facility's operations that may possibly affect the quality of storm water discharges at the Decco Facility, including but not limited to changes to storm water discharge point(s)/sample location(s), changes or additions to the BMPs at the Decco Facility resulting from an Action Plan.

28. Commenting on Revised SWPPP and/or M&RP. Decco shall submit any revised SWPPP and/or M&RP to CERF and Coastkeeper within five (5) days of

submittal to SMARTS.

28.1.    For any SWPPP or M&RP revisions that are not the result of an Action Plan, CERF and Coastkeeper shall provide comments, if any, to Decco within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from CERF and Coastkeeper, Decco shall incorporate CERF and Coastkeeper's comments into any revised SWPPP and/or M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Article VI below.

## F.    **Alternative Means of Compliance**

29.    Decco may also satisfy its obligations under the Permit through the filing and acceptance by the San Diego Regional Water Quality Control Board of a No Exposure Certification or Notice of Termination, or through implementing BMPs that meet or exceed design criteria based on the 85th percentile storm event (as defined in paragraph 32 below).

30.    <u>No Exposure Certification.</u> The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique Waste Discharger Identification Number ("WDID"), that satisfy the requirements of and receive approval from the San Diego Regional Water Quality Control Board for a "No Exposure Certification" as that term is defined in the IGP shall be considered to be in full compliance with the terms and obligations of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply so long as the No Exposure Certification is valid and remains in effect.

31.    <u>Notice of Termination</u>. The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique WDID, that satisfy the requirements of and receive an approval for a "Notice of Termination" from the San Diego Regional Water Quality Control Board as that term is defined in the IGP shall be considered to be in full compliance with the terms of this Consent Decree and the

provisions of Section III of this Consent Decree shall not apply so long as the Notice of Termination remains in effect.

32. <u>Compliance through Design for 85th Percentile Storm Event</u>. The Settling Parties agree that the Facility, or any designated portions of the Facility identified by a unique WDID, that are designed such that the Facility or portions thereof identified by the WDID are designed to, and do in fact, capture and retain on site or transfer to an approved water recycling facility two consecutive 85th Percentile Storm Event as that term is defined by the IGP shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply, provided, however, that the design shall be reviewed and certified by a licensed professional engineer and receive all requisite approvals and such capture, retention, or transfer in fact is achieved.

33. <u>Implementation of Alternative Means of Compliance</u>. Decco may choose to satisfy the conditions of this Consent Decree through successful implementation of an Alternative Means of Compliance at any time during the life of this Agreement.

## IV. **COMPLIANCE MONITORING AND REPORTING**

34. In the event that Decco is required to prepare and file a Level 2 ERA Report as defined in the Permit or an Action Plan as defined in this Consent Decree, Coastkeeper and CERF shall be permitted to conduct one site inspection within ninety (90) days of upload to SMARTS or incorporation of Plaintiffs comments into the Action Plan in order to review the BMPs in the attached SWPPP, or subsequent revisions or ERA Plans and to ensure compliance with the Industrial General Permit as implemented at the Facility.

35. Plaintiffs' counsel shall give Decco's counsel notice of its request to conduct a site visit. Counsel for Decco, Coastkeeper, and CERF shall use best efforts to coordinate a site visit within ten (10) business days of said request but no longer than thirty (30) days after said request. All visitors to the site shall execute and agree to the terms of Exhibit C attached to this Agreement prior to entering the Facility.

36. Plaintiffs acknowledge that Decco may restrict or prohibit access to certain

1  areas, operations, testing, products, or other related information at the Facility that are

2  defense-related or otherwise proprietary. Concerns, if any, shall be addressed in writing

3  and be subject to the dispute resolution provisions of the Agreement.

4      37.    During a site inspection, Plaintiffs and/or its representatives shall be allowed

5  access to the Decco Facility's SWPPP, M&RP, and other monitoring records, reports,

6  and all sampling data produced in accordance with the samples identified in paragraphs

7  15.1 and 15.2 of this Consent Decree for the Decco Facility. In addition, during the site

8  inspection, Plaintiffs and/or its representatives may collect split samples of discharges

9  from QSEs, even if outside of the first four hours of discharge, from the Decco Facility.

10  Any samples collected by Plaintiffs shall be submitted to a certified California laboratory

11  for analysis. Any onsite measurements such as pH shall be taken by a properly trained

12  operator with properly calibrated instruments.  Decco, shall have an opportunity to take

13  concurrent measurements using its own equipment.  Copies of the complete laboratory

14  reports shall be provided to Decco within five (5) business days of receipt.

15      38.    Reporting and Documents. During the life of this Consent Decree, Decco

16  shall copy Plaintiffs on all documents related to water quality at the Decco Facility and

17  all documents including data and reports uploaded to SMARTS. Such reports and

18  documents shall be provided to Plaintiffs as set forth in this Consent Judgement. Any

19  citation or violations of the Storm Water Permit received by Decco from any regulatory

20  agency, State or local agency, county or municipality shall be provided to CERF and

21  Coastkeeper within ten (10) business days of receipt by Decco.

22      39.    Compliance Monitoring and Oversight.  Decco shall pay a total of ten

23  thousand dollars ($10,000) to compensate CERF and Coastkeeper for costs and fees to be

24  incurred for monitoring the Decco Facility's compliance with this Consent Decree.

25  Payment shall be in ten equal monthly installments of one thousand dollars ($1,000) each

26  starting sixty (60) business days of the Effective Date payable to Coastal Environmental

27  Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South

28  Coast Highway 101 Encinitas, California 92024.

40.     Action Plan Payment.  Decco shall pay five thousand dollars ($5,000) per year for Plaintiffs' reasonable costs to review any Action Plan submitted.  Payment shall be made within five (5) business days of the submittal of an Action Plan and payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

## V.     Environmental Project, Reimbursement of Litigation Fees and Costs , and Stipulated Payments

41.     Environmental Project. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, Decco agrees to make a payment totaling eight thousand ($8,000) to San Diego Audubon Society to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries. Payment shall be made payable to: San Diego Audubon Society, Attention Travis Kemnitz, 4010 Morena Blvd, San Diego, California 92117, within ten (10) business days of the Effective Date.

42.     Reimbursement of Plaintiff's Fees and Costs. Decco shall pay a total of twenty-eight thousand dollars ($28,000) to San Diego Coastkeeper and Coast Law Group, LLP to reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payments shall be made within ten (10) business days of the Effective Date and payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024. Payment shall be made within ten (10) business days of the Effective Date.

43.     Stipulated Payments: Decco shall make a remediation payment of one thousand five hundred dollars ($1,500) for each missed deadline included in this Consent Decree. Decco shall have thirty (30) days to make the remediation payment and cure the missed deadline or, in the alternative, invoke the dispute resolution procedures set forth

below. Payment shall be made to San Diego Audubon Society, Attention Travis Kemnitz, 4010 Morena Blvd, San Diego, California 92117 and shall be used to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries. Decco shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VI.    **DISPUTE RESOLUTION**

44.    This Court shall retain jurisdiction over this matter until the final termination date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

45.    <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of fourteen (14) calendar days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

46.    <u>Dispute Resolution</u>. If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Southern District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

47.    <u>Burden of Proof</u>.

a.    Except as provided in subparagraph (b) below, the burden of proof for Formal Dispute Resolution shall be in accordance with applicable law.

b.    In the event of any disagreement or dispute between Plaintiffs and Decco over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Decco shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Decco Facility, or that it is in compliance with the terms of this Consent Decree. Plaintiffs shall not be required to prove that Decco's BMPs do not constitute BAT/BCT.

48.    Litigation costs and fees incurred in conducting the meet and confer, or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case law interpreting that standard.

49.    <u>Force Majeure.</u>  No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, pandemic or terrorism; restraint by court order or public authority or agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay unless the inability to pay is a direct result of pandemic. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.    If Decco claims compliance was or is impossible, it shall notify Plaintiffs in writing as soon as possible, but in no event more than five (5) business days of the date that Decco learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

b.    Within ten (10) business days of sending the Notice of Nonperformance, Decco shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Decco to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Decco shall adopt all reasonable measures to avoid and minimize such delays.

c.    The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Consent Decree, despite the timely good faith efforts of Decco, new deadlines shall be established.

d.    If Plaintiffs disagrees with Decco's Notice of Nonperformance, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, Decco shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

50.    <u>Administrative Delay</u>. Decco shall diligently pursue any approvals required for compliance with this Consent Decree. Should such diligent pursuit of approvals required for compliance be unavailing due to actions of or inaction on the part of the any governmental or regulatory entity with jurisdiction over Decco, and Decco reasonably demonstrates that these delays are not attributable to any action or

inaction on the part of the District, any relevant compliance deadlines set forth in this Consent Decree shall be tolled until such time as Parties agree to an alternative means of compliance with the Consent Decree pursuant to the Force Majeure clause herein.

**VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

51.    <u>CERF and Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, CERF and Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Decco (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the termination of this Consent Decree.

52.    <u>Decco's Release</u>. Upon the Effective Date of this Consent Decree, Decco, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases CERF and Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to CERF and Coastkeeper's Notice Letter and Complaint up to the termination of this Consent Decree by the Court.

53.    Nothing in this Consent Decree limits or otherwise affects either Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Decco's compliance with the

Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VIII. <u>MISCELLANEOUS PROVISIONS</u>

54.    <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Decco maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

55.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

56.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

57.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

58.    <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiffs:</u>

Coastal Environmental Rights Foundation
Attn: Erika Cueva
1140 South Coast Highway 101
Encinitas, California 92024

And

San Diego Coastkeeper
Attn: Matt O'Malley

2825 Dewey Road, Suite 207
San Diego, CA 92106


<u>With a copy to</u>

Livia Borak Beaudin
Coast Law Group, LLP
1140 South Coast Highway 101
Encinitas, California 92024

And

San Diego Coastkeeper
Attn: Executive Director
2825 Dewey Road, Suite 207
San Diego, CA 92106


<u>If to Decco</u>:

Decco Castings
Attn: Colm Plunkett
1596 Pioneer Way
El Cajon, CA 92020

<u>With a copy to</u>:

Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 Broadway, Suite 1900
San Diego, CA 92101

59.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

60.     <u>Effect of Consent Decree</u>. Except as provided herein, CERF and Coastkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Decco's compliance with this Consent Decree will constitute or result in

compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Decco to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

61.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

62.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

63.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

64.     <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

65.     <u>Authority</u>. The undersigned representatives for Plaintiffs and Decco each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

66.     The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

67.     The Settling Parties, including any successors or assigns, agree to be

bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated:       July 1, 2020              By: s/ Sara Kent
                                      _____
                                      Sara Kent, Programs Director
                                      Coastal Environmental Rights
                                      Foundation

Dated:       July 1, 2020              By: s/ Catherine Stiefel
                                      _____
                                      Catherine Stiefel, Board President
                                      San Diego Coastkeeper

Dated:       July 1, 2020              By: s/ Colm Plunkett
                                      _____
                                      Colm Plunkett, President
                                      Decco, Inc.

APPROVED AS TO FORM

Dated:       July 1, 2020              By: s/ Livia Borak Beaudin
                                      _____
                                      Livia Borak Beaudin
                                      Coast Law Group, LLP
                                      Attorney for Plaintiffs

Dated:       July 1, 2020              By: s/ Matt O'Malley
                                      _____
                                      Matt O'Malley
                                      San Diego Coastkeeper
                                      Attorney for Plaintiffs

Dated:       July 1, 2020              By: s/ S. Wayne Rosenbaum
                                      _____
                                      S. Wayne Rosenbaum
                                      Environmental Law Group LLP
                                      Attorney for Decco, Inc

1  **IT IS SO ORDERED.**

2  Dated:  July 1, 2020

3

4  _____
   Hon. Cathy Ann Bencivengo
5  United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28